UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDWIN J. REYES, DANIELLE N. LAZZARO, )
STEVEN C.VILLANTE, LILIANA VILLANTE, )
KEVIN G. HALSTEAD, SUSAN A. HALSTEAD, )
Individually, and on behalf of all others similarly )
situated, )
  )
    Plaintiffs, )
  ) **COMPLAINT—CLASS ACTION**
vs. )
  )
UNITED TECHNOLOGIES CORPORATION, )
d/b/a PRATT & WHITNEY, )
  )
    Defendant. )
_____)

Plaintiffs, EDWIN J. REYES, DANIELLE N. LAZZARO, STEVEN C.VILLANTE, LILIANA VILLANTE, KEVIN G. HALSTEAD, and SUSAN A. HALSTEAD, individually, and on behalf of all others similarly situated, sue the Defendant, UNITED TECHNOLOGIES CORPORATION, d/b/a PRATT & WHITNEY, and allege:

**Parties, Jurisdiction and Venue**

1.    Plaintiff, EDWIN J. REYES is a resident and owner of real estate at 18301 Hamlin Boulevard, Loxahatchee, Palm Beach County, Florida.

2.    Plaintiff, DANIELLE N. LAZZARO is a resident and owner of real estate at 14957 93rd Street North, West Palm Beach, Palm Beach County, Florida.

3.    Plaintiffs, STEVEN C. VILLANTE and LILIANA VILLANTE are residents and owners of real estate at 13438 59th Court North, West Palm Beach, Palm Beach County, Florida.

4.      Plaintiffs, KEVIN G. HALSTEAD and SUSAN A. HALSTEAD are residents and owners of real estate at 12575 56th Place North, West Palm Beach, Palm Beach County, Florida.

5.      All Plaintiffs' properties are located in an area of Palm Beach County commonly referred to as "The Acreage."

6.      Defendant, UNITED TECHNOLOGIES CORPORATION, d/b/a PRATT & WHITNEY, (hereinafter referred to as "PRATT & WHITNEY" or "Defendant") is a Delaware corporation with a principal place of business and address of 1 Financial Plaza, Hartford, CT 06101.  At all times material hereto, Defendant owned and operated a manufacturing facility on property within Palm Beach County, Florida, approximately 18 miles west of Jupiter and 15 miles northwest of Palm Beach.  Said property is located close to the northern edge of The Acreage.  Beginning in the late 1950's and continuing through the present time, Defendant has operated manufacturing divisions at said property, including those known as the Pratt and Whitney Government Engine Business Division, the Pratt & Whitney Aircraft Florida Research and Development Center, and Pratt & Whitney Rocketdyne .

7.      This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is a complete diversity of citizenship between all Plaintiffs and Defendant and the amount in controversy exceeds $75,000.00.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts complained of occurred in Palm Beach County, Florida, and the damages sustained by the Plaintiffs was to properties located in Palm Beach County, Florida.

## **Class Action Allegations**

9. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(3), on behalf of themselves and a class of persons similarly situated.

10. The class Plaintiffs seek to represent consists of all current homeowners in the Acreage and surrounding areas who have sustained a diminution of property value as a result of public revelation of the so-called "cancer cluster" in The Acreage. Upon information and belief, the class size is approximately 10,000 homeowners.

11. Plaintiffs are adequate representatives of the class, as their interests are representative of the entire class. Plaintiffs will fairly and adequately protect the interests of the class. In addition, Plaintiffs are represented by experienced and able counsel who has previously represented persons involved in class action litigation related to similar issues and will capably and fairly represent the interests of the class members.

12. There are questions of law and fact common to the class. These questions include the causation of a diminution of property value and/or the causation of property stigma damages to the real estate owned by the class members and the culpability of PRATT & WHITNEY for same. There is a common set of facts concerning the actions of Defendant such that if Defendant is liable to one class member, Defendant is liable to all. Furthermore, though the exact amount of damages suffered by each class member may vary, the proper measure of damages for the losses suffered by the class members is the essentially the same. The measure of damages is the difference between the fair market value with and without the stigma of the cancer cluster.

13. The class is sufficiently numerous that joinder of all members is impracticable, as the class is comprised of approximately 10,000 homeowners.

14. The claims of the representative Plaintiffs are typical of the claims of the class.

15. Prosecution of separate actions by individual members of the class would create a risk of:

    (A) Inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for defendants, and/or

    (B) Adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to obtain compensatory or equitable relief.

16. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is a superior method for the fair and efficient adjudication of the issues in dispute because it permits a large number of injured parties, joinder of whom is impracticable, to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as such, and no superior alternative exists whereby the relative rights of Plaintiffs, class members, and the Defendant can be fairly managed.  Class members have no interest in individually controlling the prosecution of separate actions, and no other litigation has been commenced by or against any class member concerning this controversy.

## General Factual Allegations

17. At all times material hereto, PRATT & WHITNEY's business operations at its property have included, among other pursuits, design, manufacture and testing of aviation and rocket engines including the J58 and 304.

18. Some of the engines developed, manufactured and/or tested at the subject property were powered by liquid hydrogen.

19. As part of the design, development and testing of aerospace propulsion systems, the Defendant operated engine test stands throughout the subject property. Polychlorinated biphenyls ("PCB's") were used as dielectric hydrothermal heat exchangers at the test stands. PCB's are known to cause cancer.

20. PRATT & WHITNEY's operations at the subject property have also produced acidic and alkaline rinse wastewater and hazardous wastes. Defendant's waste generated at the property have in some instances been collected in percolation ponds, buried, stored and incinerated sites on Defendant's property. The waste includes oil, sodium cyanide, thorium-dispersed nickel, construction debris, unknown solid waste, solvents, solvent sludges, asbestos, fuels, paints, pesticide and herbicide residue, benzonitrite, mercury, and commercial and laboratory chemicals.

21. One of the contaminants on the Defendant's property is 1, 4-dioxane, which the US Department of Health and Human Services considers as reasonably anticipated to be a human carcinogen.

22. There have been several toxic leaks and spills on Defendant's property, and as of November 2008, the state Department of Environmental Protection suspected that 24 contaminants were still on the property.

23.     Over the years, ground water movement, surface water run-off, percolation pond flooding, canal flooding and/or wind-blown dust have caused contaminants to escape from the Defendant's property into surrounding areas of The Acreage.

24.     Defendant failed to take adequate measures to prevent the escape of contaminants and other hazardous materials from its property.

25.     Beginning in the summer of 2009 and into early 2010, concerns emerged in The Acreage that an unusually large number of childhood cancer cases were being seen within the community.  However, it was not until February 1, 2010 that the Palm Beach County Health Department confirmed that The Acreage has a cancer cluster.

26.     The cancer cluster has received wide-spread coverage from print and television media.

27.     As a direct and proximate result of PRATT & WHITNEY's release of hazardous materials in The Acreage and the recent media coverage regarding the cancer cluster, property values within The Acreage have fallen precipitously.  In the summer of 2009, when the cancer cluster was only suspected, home sales in The Acreage slowed down.  Now that the cancer cluster has been confirmed, further negative impact is being realized on the sale of real estate within The Acreage.

## Count I – Strict Liability for Ultrahazardous Activity

28.     Plaintiffs re-allege and incorporate by reference paragraphs 1 - 27 above as if set forth fully herein.

29. PRATT & WHITNEY's business activities conducted at the subject property constituted an ultrahazardous activity because the Defendant's operations created ultrahazardous materials as set forth above.

30. Since Defendant was and is engaged in an ultrahazardous activity, it is strictly liable to Plaintiffs and the class members for all damages caused to their properties as a result thereof.

31. As a direct and proximate result of the seepage and pollution of the ultrahazardous chemicals that Defendant created, Plaintiffs and the class members have suffered a diminution of the value of their real estate and have suffered property stigma damages.

32. Defendant knew that a high degree of risk existed in its use, storage and/or disposal of such materials. Defendant also knew that a substantial likelihood existed that harm might occur should any such materials escape from its site.

33. Defendant failed to contain and properly dispose of the ultrahazardous chemicals. These acts and omissions were undertaken with conscious disregard or indifference to the rights, welfare and safety of Plaintiffs, the class members, and their properties. Accordingly, Plaintiffs seek punitive damages in such an amount as may be found proper under the facts and circumstances.

## Count II – Negligence and Negligence *Per Se*

34. Plaintiffs re-allege and incorporate by reference paragraphs 1 - 27 above as if set forth fully herein.

35. PRATT & WHITNEY owed a duty to Plaintiffs and the class members to take appropriate precautions and to possess and exercise the degree of care that an ordinary prudent

person would under the same or similar circumstances to avoid the escape of contaminants and other hazardous materials from its property.

36. Defendant breached the aforesaid duty by failing to take appropriate precautions to avoid the escape of contaminants and other hazardous materials from its property, and by failing to adequately train and supervise its employees in the storage, monitoring and disposal of contaminants and other hazardous materials.

37. Defendant exercised exclusive control over its operations on its property and the handling, storage and disposal of contaminants and other hazardous materials produced by its operations. In the normal course of events, contaminants and other hazardous materials would not escape from Defendant's property if Defendant had used ordinary care.

38. In addition, PRATT & WHITNEY's actions in permitting contaminants and other hazardous materials to escape its property constitute violations of the Florida Air and Water Pollution Control Act, § 403.011, Fla. Stat., *et seq.* and/or Florida's Water Quality Assurance Act, § 376.30, Fla. Stat., *et seq.* Plaintiffs and the class members are members of the class of people that the Acts were designed to protect, and the harm suffered is of the type that the Acts were designed to prevent. Defendant's violations of said Acts constitute negligence *per se*.

39. As a direct and proximate result of the foregoing, Plaintiffs and the class members have suffered a diminution of the value of their real estate and have suffered property stigma damages.

40. Defendant knew that a high degree of risk existed in its use, storage and/or disposal of such materials. Defendant also knew that a substantial likelihood existed that harm might occur should any such materials escape from its site.

- 9 -

41.     Defendant failed to contain and properly dispose of the ultrahazardous chemicals. These acts and omissions were undertaken with conscious disregard or indifference to the rights, welfare and safety of Plaintiffs, the class members, and their properties.  Accordingly, Plaintiffs seek punitive damages in such an amount as may be found proper under the facts and circumstances.

### Count III – Nuisance

42.     Plaintiffs re-allege and incorporate by reference paragraphs 1 - 27 above as if set forth fully herein.

43.     PRATT & WHITNEY's used its property such that contaminants and other hazardous materials caused damage to Plaintiffs and the class members' property values.

44.     The release of contaminants and other hazardous materials from Defendant's property has materially and substantially interfered with Plaintiffs and class members' use and enjoyment of their properties.

45.     As a direct and proximate result of the foregoing, Plaintiffs and the class members have suffered a diminution of the value of their real estate and have suffered property stigma damages.

46.     Defendant knew that a high degree of risk existed in its use, storage and/or disposal of such materials.  Defendant also knew that a substantial likelihood existed that harm might occur should any such materials escape from its site.

47.     Defendant failed to contain and properly dispose of the ultrahazardous chemicals. These acts and omissions were undertaken with conscious disregard or indifference to the rights, welfare and safety of Plaintiffs, the class members, and their properties.  Accordingly, Plaintiffs

seek punitive damages in such an amount as may be found proper under the facts and circumstances.

### Count IV – Trespass

48. Plaintiffs re-allege and incorporate by reference paragraphs 1 - 27 above as if set forth fully herein.

49. Plaintiffs and the class members' properties were invaded by contaminants and other hazardous substances released from the PRATT & WHITNEY's property as set forth above. Defendant caused or permitted the release of such contaminants or hazardous materials in furtherance of its business activities.

50. Defendant's conduct constitutes a repeated trespass and an unpermitted intrusion onto Plaintiffs and the class members' properties.

51. As a direct and proximate result of the foregoing, Plaintiffs and the class members have suffered a diminution of the value of their real estate and have suffered property stigma damages.

52. Defendant knew that a high degree of risk existed in its use, storage and/or disposal of such materials. Defendant also knew that a substantial likelihood existed that harm might occur should any such materials escape from its site.

53. Defendant failed to contain and properly dispose of the ultrahazardous chemicals. These acts and omissions were undertaken with conscious disregard or indifference to the rights, welfare and safety of Plaintiffs, the class members, and their properties. Accordingly, Plaintiffs seek punitive damages in such an amount as may be found proper under the facts and circumstances.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray that:

    A.    The Court determine that this action may be maintained as a class action under Fed. R. Civ. P. 23, that Plaintiffs are proper class representatives, and that the best practicable notice of this action be given to the members of the class represented by Plaintiffs;

    B.    The Court enter an Order appointing Craig R. Zobel, Esq. and Reid & Zobel, P.A. as lead class counsel for the class;

    C.    The Court enter an Order requiring Defendant to pay all expenses, including class notice;

    D.    Plaintiffs and the class members recover the compensatory damages determined to have been sustained by each of them respectively, including, but not limited to, diminution of the value of their real estate and property stigma damages, and that judgment for damages be entered herein against Defendant in an amount to be determined;

    E.    Plaintiffs and the class members recover punitive damages from Defendant based on its conscious disregard for the rights, welfare and safety of the Plaintiffs, the class members and their properties, and that judgment for same be entered against Defendant in an amount to be determined;

    F.    The Court enter a judgment awarding class counsel their reasonable attorney's fees and reimbursement of all costs and expenses; and,

    G.    The Court grant such other and further general and equitable relief as may be deemed just and proper.

**Demand for Jury Trial**

Plaintiffs, for themselves and for the class, hereby demand trial by jury on all issues so triable as a matter of right.

Dated:  February 10, 2010

Respectfully submitted,

 s/ Craig R. Zobel
Craig R. Zobel, Esq.
Florida Bar No. 056080
REID & ZOBEL, P.A.
Esperante Building, Suite 1160
222 Lakeview Avenue
West Palm Beach, FL  33401
Phone: (561) 659-7700
Fax: (561) 659-6377
Email: czobel@reidzobel.com
Attorneys for Plaintiff